# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NATE A. LINDELL,**
    **Plaintiff,**

    v.                                            Case No. 19-C-704

**DANIEL CUSHING,**
**DANIEL VERDERWERFF,**
**and THOMAS NELSON,**
    **Defendants.**

## ORDER

Plaintiff Nate A. Lindell, a Wisconsin state prisoner representing himself, sued the defendants under 42 U.S.C. § 1983 alleging that they violated his civil rights. The plaintiff is proceeding on claims under the Fourth and Eighth Amendments to the United States Constitution against Captain Daniel Vanderwerff, Sergeant Thomas Nelson, and Officer Daniel Cushing based on his allegations related to a staff-assisted strip search conducted on December 10, 2013 at the Waupun Correctional Institution.[1] The defendants have filed a motion for summary judgment.

---

[1] The court screened the amended complaint and allowed the plaintiff to proceed on the following claims: (1) defendants Cushing, Vanderwerff, and Nelson sexually assaulted him in violation of the Fourth and Eighth Amendments; (2) defendants Cushing, Vanderwerff, and Nelson retaliated against him in violation of the First Amendment; and (3) defendants Pollard, Meli, Wall and John Doe #1's prior actions caused the retaliatory strip search. (ECF Nos. 8, 11.) On January 8, 2021, the court granted defendants Cushing, Meli, Nelson, Pollard, and VerderWerff's motion for partial summary judgment on exhaustion grounds and granted defendant Ed Wall's motion for summary judgment on exhaustion grounds, thereby dismissing Claims 2 and 3. (ECF No. 69.)

## I. BACKGROUND

On December 10, 2013, Officer Vinson Walker (not a defendant) heard and followed a loud banging sound to find the plaintiff hitting his window with a blunt object wrapped in a sheet that turned out to be a faucet. Officer Walker contacted Sergeant Nelson who came to the plaintiff's cell and ordered him to stop and come to his door to be restrained. Sergeant Nelson radioed Captain Vanderwerff to inform him of the situation and ask him to come to the segregation unit. Sergeant Nelson and Officer Walker restrained the plaintiff and escorted him to a "strip cell."

Captain Vanderwerff arrived and informed staff that the plaintiff would be placed in control status. A strip search must be completed when an inmate's status changes and since the plaintiff was being moved to control status, a strip search was necessary. Inmate searches important to the security of an institute because they are a means to identify and confiscate contraband, prevent contraband from being moved from one location to another, prevent the introduction of contraband from outside the institution, and identify any evidence of an assault, self-inflicted injury, or disfigurement. When an inmate displays non-compliant behavior immediately prior to a strip search, staff conducts a staff-assisted strip search instead of a visual strip search.

The parties dispute what happened after the plaintiff arrived in the strip cell. According to the defendants, in the strip cell the plaintiff made several threats to staff and stated that he would use his mat to cover his window. (Defendants' Proposed Findings of Fact ("DPFOF"), ECF No. 85, at ¶8.) The defendants state that due to the plaintiff being non-compliant, disruptive, and argumentative, Captain Vanderwerff ordered a staff-assisted strip search. (DPFOF, ECF No. 85, at ¶11.) Additionally, defendants point out

that the plaintiff had just been removed from his cell for damaging it with a blunt weapon he had constructed, and he had just had access to pieces of broken metal, concrete, and glass. (*Id.*) The defendants state that the plaintiff made additional threats to harm staff when informed that a staff-assisted strip search would be done. (DPFOF, ECF No. 85, at ¶12.) The defendants state that Sergeant Nelson had Officer Daniel Cushing relieved from his post to perform the staff-assisted strip search because he was the most knowledgeable staff member on the unit and Sergeant Nelson wanted to make sure the staff-assisted strip search was done correctly and according to policy. (DPFOF, ECF No. 85, at ¶13.) The defendants state that Officer Cushing conducted the strip search professionally, correctly, and according to policy. (DPFOF, ECF No. 85, at ¶14.)

According to the plaintiff, he cooperated with staff when they sought to remove him from his cell, he made no threats to staff before the staff-assisted strip search, and there was not a mat in the strip cell. (Pl. Resp. to DPFOF, ECF No. 91, at ¶8.) The plaintiff states that he calmly assured staff he would cooperate with a regular strip search, saying "There's no need to do a staff-assisted strip search." (Pl. Resp. to DPFOF, ECF No. 91, at ¶11.) The plaintiff states that after Officer Cushing began the staff-assisted strip search by starting to cut off the plaintiff's clothes, the plaintiff "assured Cushing and the COs holding Lindell's limbs and the Captain who was pointing a tazer at Lindell that he, Lindell, would treat them just like anyone else who sexually assaulted him, would make a knife and stab them to death." (Pl. Resp. to DPFOF, ECF No. 91, at ¶12.) The plaintiff states that in response to the plaintiff telling the defendants that they were sexually assaulting him, Cushing inserted his finger into the plaintiff's anus. (Pl. Resp. to DPFOF, ECF No. 91, at ¶14.) The plaintiff also states that right after the search, Officer Cushing went to the

3

plaintiff's cell and told the plaintiff, "Now you know what it's like to get probed. Write about that on your blog." (*Id.*)

After the strip search, the plaintiff was escorted to cell A127 and placed in control status. The next day, he was transferred out of state to a federal prison, so he received no conduct report for his actions on December 10, 2013.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Analysis

The defendants contend that they are entitled to summary judgment because the strip search was done for the legitimate reason of detecting contraband and identifying injuries and there is no evidence the staff-assisted strip search was done for the purpose of humiliation. According to the defendants, the staff-assisted strip search was conducted because the plaintiff had been noncompliant and violent immediately prior. They also state that the strip search was conducted in a professional manner. The plaintiff, on the other hand, contends that a trial is required on his Fourth and Eighth Amendment claims. According to the plaintiff, a reasonable jury could find that the defendants had no legitimate need to conduct a staff-assisted strip search and that they did so to punish him.

4

The Eighth Amendment safeguards prisoners against searches that correctional officers subjectively intend as a form of punishment. *Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020). A strip search of a prisoner violates the Eighth Amendment if its purpose is "maliciously motivated, unrelated to institutional security, and hence totally without penological justification." *Chatman v. Gossett*, 766 F. App'x 362, 364 (7th Cir. 2019) (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)). A strip search is penologically justified when it is reasonably related to finding contraband that threatens the safety and security of the prison. *Id.* (citing *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 695, 697 (7th Cir. 1998)); *Del Raine v. Williford*, 32 F.3d 1024, 1029, 1041 (7th Cir. 1994)).

The Eighth Amendment focuses on the defendants' subjective state of mind. *Henry*, 969 F.3d at 781. But the Fourth Amendment focuses on objective reasonableness, and thus "a defendant's subjective state of mind is irrelevant to a court's Fourth Amendment analysis." *Id.* "The Fourth Amendment thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id.* When evaluating a prisoner's claim involving a strip search under the Fourth Amendment, a court "must assess that search for its reasonableness, considering 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Id.* at 779 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

As an initial matter, the plaintiff does not challenge the security justification for conducting a strip search generally, rather he challenges the kind of strip search that was

5

conducted (a staff-assisted strip search) and the way it was conducted. It is undisputed that a strip search must be conducted any time an inmate changes status. In this case, after the plaintiff was found in his cell hitting his window with a blunt object that turned out to be his faucet, he was removed from his cell and escorted to a strip cell. Captain Vanderwerff ordered that the plaintiff would be moved to control status and, therefore, a strip search was necessary to identify and confiscate contraband, prevent contraband from being moved from one location to another, and identify any evidence of injury. There is no indication that a strip search under these circumstances was objectively unreasonable under the Fourth Amendment, or that Captain Vanderwerff had an improper motive under the Eighth Amendment in directing a strip search. *See Henry*, 969 F.3d at 783 (prison officials may strip and body cavity search inmates, if the officials conduct those searches in an appropriate manner, because of concerns regarding safety and security).

The plaintiff contends that Captain Vanderwerff needlessly ordered a staff-assisted strip search[2] even though the plaintiff said he would cooperate with a "regular" strip

---

[2] Captain Vanderwerff describes a staff-assisted strip search as follows. A staff-assisted strip search is conducted while the inmate remains restrained, and two officers maintain hands-on control of the inmate by holding on to his arms. A third member then cuts off the inmate's clothes using Dura-Shears. Once the clothes are cut off, the clothes are inspected for contraband. Then, the staff member conducting the search visually inspects the inmate's body from top to bottom, including checking under the inmate's armpits, under his testicles, between his buttocks, and the bottoms of his feet. Because the inmate is restrained, the staff member conducting the staff-assisted strip search needs to physically touch the inmate at various times during the search. The searching staff member wears gloves at all times while conducting the search. Two bladed or straightened fingers are used to lift the inmate's testicles. This does require brief contact with the inmate's testicles. This process takes a second. The back of both bladed hands, palms facing each other, is used to separate the inmate's buttocks. This process takes a

6

search[3]. According to the plaintiff, Officer Cushing needlessly "lifted up Lindell's penis and testicles and spread Lindell's buttocks, feeling in between them," and then needlessly "inserted his finger into Lindell's anus" in response to the plaintiff "calmly saying" that staff were acting like sex offenders because the plaintiff told them he would cooperate with a "regular strip search." (ECF No. 90 at 2; ECF No. 12 at 4, ¶13.)

The parties dispute whether the plaintiff was argumentative and threatened to use his mat to cover his window after he arrived in the strip cell but before Captain Vanderwerff ordered the staff-assisted strip search. However, this dispute is not material because it is undisputed that the plaintiff was escorted to the strip cell after he was found in his cell hitting his window with a blunt object that turned out to be his faucet. Despite the plaintiff's assertion that a staff-assisted strip search was not necessary because he calmly assured staff that he would cooperate with a regular strip search when he arrived at the strip cell, Captain Vanderwerff ordered the staff-assisted strip search due to the plaintiff's disruptive behavior and the fact that plaintiff had just had access to pieces of broken metal, concrete, and glass. According to Captain Vanderwerff, he needed to make sure the plaintiff was

---

second and requires brief contact with the buttocks. (Declaration of Daniel Vanderwerff, ECF No. 88, at ¶11.)

[3] Captain Vanderwerff describes a visual strip search as follows: the correctional staff direct the inmate to remove all clothing and hand it over to the searching staff member. Once received, the staff member will place the clothing in a clean and secure area, away from inmate contact. Once the inmate is completely unclothed, the staff member will visually inspect the entire body, including hair, ears, mouth, nose, hands, armpits, groin area, between the toes, bottoms of feet, inner portions of the legs, and rectum. It may be necessary for an uncircumcised male to roll back the foreskin of his penis for inspection. All clothing and personal articles are inspected and then returned to the inmate. (Declaration of Daniel Vanderwerff, ECF No. 88, at ¶10.)

7

not hiding any other contraband or broken pieces of his cell on his person. (Declaration of Daniel Vanderwerff, ECF No. 88 at 4, ¶13.)

The court will not second guess Captain Vanderwerff's decision that a staff-assisted strip search was necessary under these circumstances. *See Henry*, 969 F.3d at 783 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (When evaluating reasonableness, in the context of strip searches of prisoners as in others, courts must afford prison administration "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); *Brooks v. Gloudemans*, No. 16-cv-77-JPS, 2017 WL 237622, at *6 (E.D. Wis. Jan. 19, 2017) (decision to perform staff-assisted rather than visual strip search predicated on inmate's aggression and noncompliance prior to the search not inappropriate); *Simpson v. Mason*, No. 13-cv-776-JPD, 2105 WL 5918928, at *11 (W.D. Wis. Oct. 9, 2015) ("[P]rison officials do not violate the Eighth Amendment when they have legitimate reasons to deny a prisoner [the] choice" between a visual or staff-assisted strip search.). There were legitimate security reasons for conducting a staff-assisted strip search and, therefore, Captain Vanderwerff's decision to order the search was reasonable under the Fourth Amendment. Likewise, the record does not support a finding that Captain Vanderwerff ordered the staff-assisted strip search to harass or humiliate the plaintiff in violation of the Eighth Amendment.

Turning to the issue of the way the staff-assisted strip search was conducted, a factual dispute prevents entry of summary judgment on the plaintiff's Fourth or Eighth Amendment claim. The defendants contend that Officer Cushing conducted the strip

8

search professionally, correctly, and according to policy.[4] According to the plaintiff, during the search,

> Cushing cut off Lindell's clothing, lifted up Lindell's penis and testicles and spread Lindell's buttocks, feeling in between them, while multiple other C.O.s held Lindell's arms, shoulders and legs, as Lindell stood in shackles and handcuffs and Cpt. Vanderwerff pointed a tazer at the back of Lindell's head. As Lindell was being sexually assaulted, he said, "This is sexual assault. You are sexually assaulting me. You're fucking sex offenders! I told you I'd cooperate with a regular strip search." In response to these comments, Cushing inserted his finger into Lindell's anus.
>
> …
>
> After the forenoted sexual assault, Cpt. Vanderwerff pointed tazer at Lindell, while Lindell was in a locked strip cage and looking at the Cpt., turned on the tazer's laser and moved the laser beam around on Lindell's forehead, saying, "I could shoot you … right there, from here," while evilly smiling.
>
> After Cushing's forenoted sexual assault of Lindell, while Lindell was in a cell with no clothing, Cushing came to the door for Lindell's cell and made sexually degrading remarks to Lindell. One of the remarks that Cushign made was, "Now you know what it's like to get probed. Write about that on your blog."

(ECF No. 12 at 4, ¶¶13, 15-16.)

At summary judgment, I must credit the plaintiff's sworn testimony based on personal knowledge, even if it is contradicted by the defendants' testimony. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018). The plaintiff's description of Officer Cushing cutting off his clothing, lifting up his penis and testicles, spreading his buttocks, and feeling in between his buttocks is consistent with the procedure for staff-assisted strip searches described by Captain Vanderwerff. This

---

[4] The defendants did not provide the applicable policy, although Captain Vanderwerff's declaration describes the steps involved in a staff-assisted strip search, *see supra*.

portion of the search is also consistent with Wisconsin Department of Corrections procedures and was conducted in a constitutionally permissible manner. *See Scott v. Schneider*, Case No. 14-CV-908, 2016 WL 5340211, at *2 (E.D. Wis. Sept. 19, 2016) (describing staff-assisted strip search procedures); *see also Brooks*, 16-cv-77-JPS, 2017 WL 237622, at *6 (E.D. Wis. Jan. 19, 2017). On the other hand, if Officer Cushing inserted his finger into the plaintiff's anus, a reasonable jury could find that the strip search was conducted in an unreasonable manner in violation of the Fourth Amendment and that the search was conducted in a harassing manner in violation of the Eighth Amendment. *See Rivera v. Drake*, 497 F. App'x 635, 637-38 (7th Cir. 2012). Likewise, if Captain Vanderwerff threatened to shoot the plaintiff with a taser in the manner described in the context of a strip search, a jury could find that the strip search was conducted in an unreasonable in violation of the Fourth and in a harassing manner in violation of the Eighth Amendments.[5] *See Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009).

The plaintiff claims that Sergeant Nelson is liable for ordering Officer Cushing to conduct the strip search. According to the plaintiff, Officer Cushing had been issuing the plaintiff conduct reports to harass the plaintiff for pursuing legal challenges to the conditions in Waupun's RHU – on August 4, 2013 Cushing issuing the plaintiff a conduct report (2345591) for having a pen and on August 5, 2013 Cushing issued Lindell a conduct report (2345593) for discussing pursuit of a John Doe petition seeking criminal charges against an abusive guard – "it's apparent that Sgt. Nelson chose Cushing to

---

[5] It is not clear from plaintiff's description whether Captain Vanderwerff's conduct with the taser occurred during or after the strip search, but, making all inferences in favor of the plaintiff, I will assume that it occurred in the context of the search.

perform the staff-assisted strip search because Sgt. Nelson knew that Cushing was the most likely to sexually abuse Lindell while doing the staff-assisted strip search." (Pl. Resp. to DPFOF, ECF No. 91, at ¶13.) However, there is no indication that Sergeant Nelson participated in the strip search. He is not liable for Officer Cushing's or Captain Vanderwerff's conduct during the search. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2011). The plaintiff has not submitted evidence that Sergeant Nelson caused or participated in Officer Nelson's insertion of his finger into the plaintiff's anus or any conduct on the part of Captain Vanderwerff. The court will therefore grant the defendants' motion for summary judgment as to Sergeant Nelson.

**C.     Qualified Immunity**

The defendants contend that they are entitled to qualified immunity because it is not "beyond debate" that correctional staff cannot perform a strip search for the purpose of detecting contraband when moving a prisoner or that they must use a hand-off procedure. The defendants state that the cases clearly note that a staff-assisted strip search is not unconstitutional where there is noncompliance prior to the search. Because I have granted the defendants' motion for summary judgment as to Captain Vanderwerff's decision to order the staff-assisted strip search, I need not consider the defendants' arguments that they are entitled to qualified immunity on that portion of his claims. The defendants do not address qualified immunity as it relates the plaintiff's averments regarding Officer Cushing and Captain Vanderwerff's conduct during the strip search.

Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). More than a "mere defense to liability," it provides "immunity from suit." *Mitchell*

11

*v. Forsyth*, 472 U.S.511, 526 (1985). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The doctrine "is an affirmative defense." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). "[O]nce the defense is raised, it becomes the plaintiff's burden to defeat it." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008).

Whether qualified immunity applies turns on two questions: first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam). These questions may be addressed in either order. *Pearson v. Callahan*, 555 U.S. 223, 236-43 (2009). "If either inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019).

A constitutional right is clearly established if "the right in question [is] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Weinmann v. McClone*, 787 F.3d 444, 450. "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, __ U.S. __, 139 S. Ct. 500, 503, (2019). This means courts "analyze whether precedent squarely governs the facts at issue, mindful that [courts] cannot define clearly established law at too high a level of generality." *Strand v. Minchuk*, 910 F.3d 909, 917 (7th Cir. 2018).

12

Case 2:19-cv-00704-LA    Filed 03/28/22    Page 12 of 14    Document 94

I have already determined that the facts, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right as to the plaintiff's remaining claims against Officer Cushing and Sergeant Vanderwerff. I also find that plaintiff's right under the Eighth Amendment to be free of a strip search conducted in a harassing manner was well established in December 2017. In 2009, the Seventh Circuit held that, even when a strip search is conducted for a valid penological reason, conducting the search in a harassing manner intended to humiliate and cause psychological pain violates the constitution. *Mays*, 575 F.3d at 649. A reasonable official would have understood that inserting his finger into the plaintiff's anus or threatening to shoot plaintiff in the head with a taser in retaliation for plaintiff's comments would violate the Eighth Amendment.

Plaintiff's Fourth Amendment rights, however, were not clearly established at the time of the search. In *Johnson v. Phelan*, the Seventh Circuit held that prisoners retain no right of privacy under the Fourth Amendment. 69 F.3d 144, 146 (7th Cir. 1995). At the time the search occurred, at least one Seventh Circuit case, *Peckham v. Wisconsin Dept. of Corrections*, had questioned *Phelan's* holding but it did not conclusively establish what actions would violate a prisoner's Fourth Amendment rights. *Phelan* was eventually overturned, but only several years after the incident at issue in this case. *See Henry*, 969 F.3d at 783. I cannot say that a reasonable officer would have understood that an unreasonable strip search of a prisoner would violate the Fourth Amendment in December of 2017 and accordingly will dismiss plaintiff's Fourth Amendment claims.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 83) is **GRANTED IN PART and DENIED IN PART**. The motion is

13

granted to the extent that (1) Sergeant Nelson is entitled to summary judgment and is **dismissed**, (2) Captain Vanderwerff is entitled to summary judgment on the plaintiff's Fourth and Eighth Amendment claims that he ordered the staff-assisted strip search unnecessarily or for an improper purpose, (3) Officer Cushing is entitled to summary judgment on the plaintiff's Fourth and Eighth Amendment claims that he conducted the strip search in an unreasonable and harassing manner (except as to that portion of the claims that remain, described below), and (4) the defendants are entitled to summary judgment on plaintiff's remaining Fourth Amendment claims. The motion is denied as to the plaintiff's Eighth Amendment claims that Officer Cushing inserted his finger in the plaintiff's anus during the search and that Captain Vanderwerff threatened to shoot the plaintiff with his Taser in the manner described.

Dated at Milwaukee, Wisconsin, this 28th day of March, 2022.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge